[No. G018750. Fourth Dist., Div. Three. May 25, 1999.]

LOUREY A. McCOMBER, Plaintiff and Appellant, v.
CHELLE WELLS et al., Defendants and Appellants.

514

**COUNSEL**

Lourey A. McComber, in pro. per., for Plaintiff and Appellant.

Rosner, Owens & Nunziato, Charles Michaelis, Tom A. Nunziato and Phil J. Montoya, Jr., for Defendants and Appellants.

**OPINION**

**SONENSHINE, J.\***—A notary public, Chelle Wells, her employer, McCoy Motor Company doing business as Mills Ford, and her bond surety, Western

---

\*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Surety Co. (collectively Wells unless otherwise indicated), appeal from a judgment entered in favor of Lourey A. McComber in her negligence action. Wells maintains the trial court erroneously failed to offset the jury's damages award and should have precluded Lourey from recovering noneconomic damages. Lourey also challenges several of the trial court's rulings. We modify the economic and noneconomic damage awards, but otherwise affirm the judgment.

## I

In 1983, Lourey and Gerald McComber bought a home in Anaheim, borrowing money from two lenders who then held the first and second trust deeds encumbering the property. In 1985, the McCombers obtained several unsecured loans from Pioneer Bank. Within a few months the money was spent, and the bank asked Gerald to secure the loans by signing a promissory note and a third trust deed. Gerald agreed.

Gerald signed his and Lourey's names to the note and trust deed. He took the documents to McCoy Motor Company and asked his friend, William Mills, to help him notarize both signatures even though Lourey was not present. Mills had the company's notary, Chelle Wells, carry out the favor.

The bank accepted the trust deed and sent it to Richard Haly of Title Information Services Inc. (Haly) for recording. Haly discovered the trust deed could not be recorded because title was held in Lourey's maiden name, Lourey A. Stark, but the trust deed was signed Lourey A. McComber. Haly fixed this discrepancy by changing the description of the trustor from "Lourey A. Stark" to "Lourey A. McComber, AKA Lourey A. Stark." The trust deed was successfully recorded. Subsequently, Gerald forged Lourey's name on several other documents, extending the term of the loan for several years.

In 1986, the McCombers separated and Gerald was convicted for forging and altering checks. In 1990, Pioneer Bank sought to foreclose on the property until Lourey repaid the bank over $30,000. Thereafter, she was unable to make payments to the holders of the first and second trust deeds and they foreclosed upon the property.

Lourey filed a negligence action against Pioneer Bank and several of its employees (collectively Pioneer Bank), Haly, and Wells.[1] Pioneer Bank cross-complained against Wells for fraud.

---

[1]Lourey also sought recovery from Western Surety, which issued Wells's notarial bond. Mills Ford was later dismissed from the lawsuit and is not a party to this appeal.

In addition to negligence, Lourey alleged causes of action for fraud, fraud in the inducement, intentional infliction of emotional distress, conspiracy to commit fraud, rescission, and

Within a few months, Lourey settled with Haly for $100,000 and with Pioneer Bank for $105,000. Pioneer Bank also assigned to Lourey its cross-complaint against Wells. The court determined both settlements were made in good faith.

In April 1994, trial began against the remaining defendants. The court allowed Lourey to amend her complaint to allege negligent infliction of emotional distress against Wells. The jury concluded Wells was liable and returned a special verdict, awarding Lourey $70,600 in economic damages and $83,250 in noneconomic damages. The jury apportioned fault as follows: Pioneer Bank, 0 percent; Haly, 0 percent; Lourey, 0 percent; Wells, 33⅓ percent; and Gerald, 66⅔ percent. In addition, the jury found Gerald liable for intentional infliction of emotional distress, fraud and deceit. However, it determined Wells's misconduct did not proximately cause Pioneer Bank's damages, so Lourey recovered nothing on those assigned claims.

## II

After the verdict, Wells argued they were entitled to a setoff for Haly's and Pioneer Bank's preverdict settlements. The court disagreed, ruling, "Because the jurors were instructed in the special verdict to assess damages to the conduct of Gerald McComber[,] and to assess damages to the negligence of Wells . . . there is no common sum of damages against which the good faith settlement may be set off. Plaintiff shall have judgment against defendant Wells . . . in the sum of $153,850 plus costs." We agree with Wells's contention this was error.

Code of Civil Procedure section 877[2] mandates, "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of *tortfeasors claimed to be liable for the same tort,* . . . it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it *shall reduce the claims against the others in the amount stipulated by the release,* the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater. [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ." (Italics added.) Moreover, "a nonsettling defendant [is] entitled to a setoff from plaintiff's

slander of title. Except as to Gerald McComber, the court granted the defendants' nonsuit as to those claims.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

award of economic damages in the amount of settlements paid prior to trial by other defendants, *despite the jury's finding that the settling defendants had no fault for plaintiff's injuries*[.]" (*Poire* v. *C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1837 [46 Cal.Rptr.2d 631], italics added.) This satisfies the fundamental goals of section 877, to preclude a double recovery arising out of the same wrong and encourage settlements. (39 Cal.App.4th at pp. 1839-1841.)

In light of the above, we find section 877 applies because Lourey initially *claimed* all defendants were liable for negligence. Indeed, Lourey alleged Wells's negligent conduct "set in motion a set of circumstances which in combination with the acts of the other defendants caused" her injury. It is irrelevant the jury ultimately found the settling defendants were not negligent.

We are at a loss to understand what the trial court meant when it found the jurors failed to calculate the necessary "common sum of damages against which the good faith settlement may be offset." By special verdict the jury was asked to determine the amount of damages caused by Wells's negligent conduct "without taking into consideration the reduction of damages because of other persons or entities."[3] Thus, the amount calculated, $153,850, represents the total sum of damages caused by Wells's and Gerald's negligent conduct.[4] It matters not that the jury determined Lourey was entitled to additional economic damages as a result of Gerald's intentional misconduct, i.e., fraud and deceit. Section 877 applies to offset damage awards against tortfeasors claimed to be liable for the *same* tort.

Accordingly, we apply the well-established formula for calculating the offset developed by the court in *Espinoza* v. *Machonga* (1992) 9 Cal.App.4th 268, 277 [11 Cal.Rptr.2d 498]: The portion of the settlement which may be set off from a judgment of economic damages is determined by application of the percentage of the economic damages award in relationship to the total

---

[3]We note the court correctly instructed the jury an offset would occur: "In this case the plaintiff Lourey McComber has made a settlement with Pioneer Bank and its employees and Richard Haly of Title Information Service. If you should find that the plaintiff Lourey McComber is entitled to recover against the defendants . . . Wells and Gerald McComber, you shall award damages to the plaintiff for the same amount you would have awarded if no such settlement had been made. [¶] In such event the court will later deduct the amount of this settlement from the amount of your award, and your verdict will be reduced accordingly."

[4]This conclusion also leads us to the finding the trial court erroneously calculated Wells's noneconomic award. The amount the jury calculated for noneconomic damages, $83,250, represents the total sum caused by Wells's and Gerald's misconduct. Accordingly, judgment entered against Wells for noneconomic damages should have been $27,749.72, reflecting the jury's determination Wells was only 33⅓ percent at fault. (Civ. Code, § 1431.2 [noneconomic damages are only several].)

award of damages. (See, e.g., *Poire* v. *C.L. Peck/Jones Brothers Construction Corp., supra,* 39 Cal.App.4th at p. 1841.) Here, the jury awarded $70,600 for economic damages, which equals 45.89 percent of the total $153,850 judgment. Wells is entitled to offset 45.89 percent of the $205,000 pretrial settlements. This equals $94,074.50, which is much greater than the jury's economic damage award. Consequently, the judgment must be modified to reflect the $94,074.50 offset, which reduces the economic damage award to zero.[5]

The above ruling marks the end of Wells's victories on appeal. We find disingenuous Wells's next argument the judgment for noneconomic damages is subject to an offset from the pretrial settlements. All the cases upon which Wells relies when discussing economic damages also plainly say the same rules do not apply to noneconomic damages. (*Espinoza* v. *Machonga, supra,* 9 Cal.App.4th at p. 272; *Poire* v. *C.L. Peck/Jones Brothers Construction Corp., supra,* 39 Cal.App.4th at p. 1838; *Greathouse* v. *Amcord, Inc.* (1995) 35 Cal.App.4th 831, 838-839 [41 Cal.Rptr.2d 561]; *Hoch* v. *Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 67-68 [29 Cal.Rptr.2d 615].) "[E]ach defendant is solely responsible for its share of noneconomic damages under Civil Code section 1431.2 [Proposition 51]. Therefore, a nonsettling defendant *may not receive any setoff* under section 877 for the portion of a settlement by another defendant that is attributable to noneconomic damages." (*Poire* v. *C.L. Peck/Jones Brothers Construction Corp., supra,* 39 Cal.App.4th at p. 1838, italics added.)[6]

## III

 Wells contends a notary public who negligently notarizes a trust deed is not liable for emotional distress damages as a matter of law. We disagree.

" 'It has been repeatedly held in California that when a notary public assumes his office he [or she] is required to perform his [or her] duties with honesty, integrity, diligence and skill.' " (*Lewis* v. *Agricultural Ins. Co.* (1969) 2 Cal.App.3d 285, 292 [82 Cal.Rptr. 509, 44 A.L.R.3d 1233], italics

---

[5]Wells alternatively argues their negligence did not cause Lourey to suffer any economic damages and such damages were speculative. In light of our holding, we need not decide those issues.

[6]Civil Code section 1431.2 provides in pertinent part: "(a) In any action for personal injury . . . based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

omitted.) Indeed, because of the important function notaries serve in our society, their duties are prescribed by law. (Gov. Code, §§ 8205-8211 and Civ. Code, §§ 1185-1189.) One commonly known duty, which is relevant in this case, is found in Government Code section 8205: "(a) It is the duty of a notary public, when requested: [¶] . . . [¶] (2) To take the acknowledgment . . . of powers of attorney, mortgages, deeds, grants, transfers, and other instruments of writing executed by any person, and to give a certificate of that . . . acknowledgment, endorsed on or attached to the instrument. The certificate shall be signed by the notary public in the notary public's own handwriting. . . ." In carrying out this duty, "A notary public shall keep one active sequential journal at a time, of all official acts performed . . . [¶] . . . and shall include . . . [¶] . . . [¶] . . . The signature of each person whose signature is being notarized . . . [¶] . . . [and a] statement as to whether the identity of a person making an acknowledgment was based on personal knowledge or satisfactory evidence. . . ." (Gov. Code, § 8206.) Satisfactory evidence means "the absence of any information, evidence, or other circumstances which would lead a reasonable person to believe that the person making the acknowledgment is not the individual he or she claims to be" in addition to the oath of one or two credible witnesses depending on the circumstances. (Civ. Code, § 1185, subd. (c).)

Moreover, Civil Code section 1185, subdivision (a) mandates, "The acknowledgment of an instrument shall not be taken unless the officer taking it personally knows, or has satisfactory evidence that the person making the acknowledgment is, the individual who is described in and who executed the instrument." In fact, the notary taking the acknowledgment of an instrument "shall endorse thereon or attach thereto a certificate" stating the parties signing the document "personally appeared" before him or her and make assurances the signatures are genuine. (Civ. Code, §§ 1188 & 1189.)[7]

The parties agree Wells breached these statutory duties by acknowledging Lourey's signature and falsely certifying (1) Lourey "personally appeared" and (2) Wells received "satisfactory evidence" Lourey signed the document. The parties stipulated Wells was negligent per se.

When delineating a notary public's duties, the Legislature also contemplated what should occur if a notary commits "official misconduct or

---

[7]In notarizing a signature, the notary signs and attaches a seal to a certificate attesting the signor personally appeared and is "personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument." (Civ. Code, § 1189, subd. (a).)

neglect." (Gov. Code, § 8214.) In those circumstances, "[T]he notary public . . . [is] liable in a civil action to the persons injured thereby *for all the damages sustained." (Ibid.,* italics added.) We must assume the Legislature was aware of the large body of existing case law differentiating between economic and noneconomic damages when enacting the above statute in 1943 and making amendments in 1977 and 1982. (See *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977 [140 Cal.Rptr. 669, 568 P.2d 394]; see also *People* v. *McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [Legislature " 'deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof' "].) We may infer from its decision not to include language limiting liability to economic damages it intended "all damages sustained" to include emotional distress damages. (See *Bailey* v. *Superior Court, supra,* 19 Cal.3d at p. 977.)[8]

Another court reached the same conclusion in a similar case. In *Pintor* v. *Ong* (1989) 211 Cal.App.3d 837 [259 Cal.Rptr. 577], a homeowner borrowed money from a bank, securing the loan with a deed of trust encumbering his home. The bank assigned the deed to a third party. After the homeowner repaid the loan, the assignees refused to execute and deliver a request for full reconveyance of the deed as required by Civil Code section 2941. The court determined violation of this statutory duty entitled the homeowner to recover damages for emotional distress. It noted Civil Code section 2941 specifically provides, " 'The violation by a beneficiary, trustee, or mortgagee, or assignee thereof, of any provision of this section shall make the beneficiary, trustee, or mortgagee, or assignee thereof, liable to the trustor or mortgagor . . . *for all damages which any of such persons may sustain by reason of such violation,* and shall also forfeit to any of such persons the sum of three hundred dollars ($300).' " (*Pintor* v. *Ong, supra,* 211 Cal.App.3d at p. 840, fn. 1, italics added.) The court determined, "[W]e apply the general rule of tort damages, namely, that all detriment proximately caused by breach of a legal duty is compensable, including damages for ʼemotional distress. ([Civ. Code,] § 3333; [citations].)" (*Id.* at pp. 841-842.) It reasoned, " '[W]ilful violations of the statutory standards entitle a [victim] to compensation for all damages resulting therefrom, including damages for mental and emotional distress.' " (*Ibid.,* quoting *Young* v. *Bank of America* (1983) 141 Cal.App.3d 108 [190 Cal.Rptr. 122] [credit cardholder entitled to emotional distress damages from bank that violated the Song-Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.)].)

---

[8]We note one other jurisdiction has reached this same result. (*Webb* v. *Pioneer Bank & Trust Co.* (La. 1988) 530 So.2d 115 [notary, who negligently acknowledged wife's signature which husband forged on trust deed and mortgage loan was liable for emotional distress damages].)

## IV

Wells correctly asserts section 338, subdivision (f), in pertinent part, requires filing an action against a notary within one year of when the plaintiff actually discovers or with reasonable diligence could have discovered his or her injury. (See *Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 129-130 [125 Cal.Rptr. 59].) Wells contends Lourey's negligence action was time-barred as a matter of law, explaining its "motion for directed verdict on this issue was denied. [No record citation.] Thus, the special verdict [asked the jury] the following question . . . : '. . . Would further inquiry, made with reasonable diligence, have resulted in discovery prior to February 20, 1990, of the negligent acts of the defendant[ ] . . . Wells . . . . Answer yes or no.' 'No' was checked by the jury. [¶] Simply put, the error was to submit the question to the jury." Wells is mistaken in several respects.

## V

First we must note, contrary to Wells's assertion, they did not request a directed verdict on this issue. Rather, Wells moved for nonsuit in the middle of trial. After hearing a lengthy argument from both parties the court held, "The question whether the complaint was timely filed I think is one which might be resolved in favor of the defense if the trier of fact chose to believe certain evidence and one which might be resolved in favor of the plaintiff if the trier of fact chooses to believe certain other evidence. So the question of the statute of limitations will go to the jury . . . ." We agree.

█ "A nonsuit may be granted only where, disregarding conflicting evidence on behalf of the defendant and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. [Citations.] Neither the appellate court nor the trial court may weigh the evidence nor consider the credibility of the witnesses. [Citation.]" (*Jones* v. *Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 [209 Cal.Rptr. 456].) Such was not the case here.

Wells cites to a small portion of Lourey's testimony in which she admitted she learned from a Pioneer Bank employee in March 1989 that she had signed a trust deed to secure a loan. She also testified she did not remember signing the trust deed, opined she would not have borrowed money from the bank if she had been asked to secure the loan, and admitted she knew by

August 1989, someone was forging her name on other documents. Wells concludes only one inference can be drawn from these facts: Lourey knew or should have known "something relating to the deed of trust was amiss" by the end of 1989, triggering the one-year statute of limitations period. Lourey did not file her lawsuit against Wells until two years later, on February 21, 1991.

But Wells fails to acknowledge there was substantial contrary evidence supporting Lourey's contention she first discovered the fraudulent signature on the notarized trust deed in June 1990, which would have rendered the complaint timely filed. Lourey testified she had no reason to suspect the trust deed was forged in 1989 because she believed the bank employee who told her she signed the trust deed. Lourey stated, "I had no reason to suspect Pioneer Bank. . . . He was a banker and he told me I signed it. And I said okay, I must have." Lourey also said, "I was going to pay the loan whether it was unsecured or secured at that point. I believed I owed the money. And I made payments in good faith. . . . I wasn't trying to avoid an obligation." In addition, she asserted, "I remembered taking out a loan. That's why I was never suspicious of any forgery on the loan." Although Lourey knew in 1989 her name was being forged, she explained the falsified documents were held by Capistrano Bank and she "had no reason to believe . . . it [also] involved Pioneer Bank." She said, "I had no idea that the two were interrelated." Finally, she professed she became aware of the notarized forged trust deed when she saw it for the first time during a deposition in an unrelated lawsuit in 1990. Due to the substantial conflict in the evidence, the nonsuit was properly denied.

## V

In a two-page list, Lourey raises fourteen claims of trial court error. She neglects to give us any legal authority to support her contentions. Moreover, she fails to make a single citation to the 3,061-page reporter's transcript or 1,454-page clerk's transcript. ■ "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. . . . [E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p.

627.) Although Lourey is representing herself in this appeal she is not entitled to special treatment and is required to follow the rules.[9]

## VI

The judgment against Wells is modified to reflect the award of economic damages is $0 due to an offset from settling defendants. The amount of noneconomic damages should be apportioned according to Wells's percentage of fault and therefore must be reduced to $27,749,72. In all other respects, the judgment is affirmed. Each party shall bear its own costs.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.

---

[9]We deny Lourey's request to augment the record.