Filed 6/10/15  P. v. Duran CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PAUL EDWARD DURAN,<br><br>    Defendant and Appellant. | B256701<br><br>(Los Angeles County<br>Super. Ct. No. BA415427) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Katherine Mader, Judge.  Affirmed.

Paul Edward Duran, in pro. per.; and Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

## PROCEDURAL BACKGROUND

In January 2014, appellant Paul Edward Duran was arraigned on a felony information charging him with carjacking, in violation of Penal Code section 215, subdivision (a)[1] (count 1); attempted carjacking, in violation of sections 664 and 215, subdivision (a) (count 2); and attempted second degree robbery, in violation of sections 664 and 211 (count 3). In March 2014, the prosecution added an allegation that Duran had suffered a prior strike conviction in New Mexico.

Duran represented himself at the jury trial, and filed numerous motions before, during and after trial, including: two section 995 motions; a motion to compel discovery; a *Pitchess*[2] motion; two section 1385 motions to dismiss based on insufficient evidence; a motion to suppress evidence, pursuant to section 1538.5; a demurrer to the amended information; two motions to arrest judgment; a request for judicial notice of a 2004 psychological evaluation; a posttrial discovery motion; a motion for a new trial; and a motion to exclude the photographic six-pack lineup as prejudicial. Some motions were abandoned or withdrawn by Duran; the trial court denied others. Only Duran's pretrial motion to exclude the six-pack lineup was granted. As to that motion, the court found that the photographic array—in which Duran was the only individual depicted with tattoos on his forehead—was "unduly suggestive" and prohibited the prosecution from using it during the examination of one witness.[3]

A jury found Duran guilty on all counts. The trial court subsequently found that Duran suffered a strike prior conviction. Duran was sentenced to: the upper term of nine years on count 1, doubled because of the strike prior, one-third the midterm for 10

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] The court required that the prosecution's witness (who was not a victim of any of the charged crimes) undergo a Evidence Code section 402 hearing before testifying to evaluate whether his identification was tainted by the suggestive six-pack. The witness in question was not called to testify, and no section 402 hearing was conducted.

months on count 2, doubled due to the strike prior, and one-third the midterm for eight months as to count 3, doubled due to the prior strike. The sentences on counts 2 and 3 were ordered served consecutively to the sentence on count 1. Custody credits were awarded, and various fines and fees imposed. This timely appeal followed.

## FACTUAL BACKGROUND

On the afternoon of July 21, 2013, as Melinda McLeod was parking her car near her home, Duran approached her from behind, punched her in the back, took her car keys and got into her vehicle and drove off. After Duran was apprehended later that evening, Mcleod identified him at a field show-up and also identified him at trial.[4] She testified that when he assaulted her, Duran had been "kind of greasy and sweaty," and his long hair (pulled back during trial) was "down and sweaty." McLeod also noticed Duran had "blocks of dark tattoos" on his forehead. She could not identify them at the time because Duran was dirty and sweaty, and she was afraid. She reported the incident to the police. Later that day, Duran led police on a pursuit weaving in and out of traffic and into oncoming traffic. The officers ultimately abandoned the vehicle pursuit, deeming it too dangerous in light of the amount of pedestrian traffic. One officer involved in that pursuit testified he saw "666" tattooed across Duran's forehead, although he did not call that information in nor include it in a report.

At about 8:00 p.m. on July 21, 2013, Glenda Cerrato had just parked her car. She left the front driver's side door open and opened the rear door to get her four year old out of the car. Just then, Duran drove toward Cerrato at a high rate of speed, parked the vehicle and got out. He sat in the driver's seat of Cerrato's car screaming at her to give him her keys. Cerrato grabbed her child and ran inside her home. Duran ran away. At trial, Cerrato identified Duran as the man who tried to take her keys. Cerrato testified that at the time he tried to take her keys, Duran's face was dirty and sweaty, his hair was

---

[4] McLeod testified that, on a scale of 1-to-10, her degree of certainty that Duran was the man who assaulted her was a "10."

all over his face, and he had "something big" tattooed on his forehead. Cerrato identified Duran later that evening during a field show-up.

Next, Duran approached Benjamin Hakimfar and demanded the keys as Hakimfar approached his car. Hakimfar made up a story, telling Duran the car was not his, but that he lived across the street and would bring his own car over. Duran agreed; Hakimfar called 911 as he left the scene. Hakimfar, who testified at trial that he was "positive" Duran had been the man he encountered, described him at the time of their July 21, 2103, encounter as having long dirty hair and "a lot of tattoos" on his face. He could not specify what the tattoos were.

Later on the evening of July 21, 2013, Duran approached Ramon Orozco as Orozco was removing an item from the trunk of his car. Duran tried to take Orozco's keys, slapped Orozco's face and ran off. Orozco ran after Duran, signaling Duran's location to a helicopter overhead. As Orozco rounded the corner, Duran punched him in the face. When the police arrived at the scene they found Duran—very sweaty and dirty, with long greasy hair—hiding in the bushes. One of the apprehending officers testified that Duran had tattoos on his face but that he could not make out the details of the tattoos at first because Duran was so dirty. Orozco testified that he saw tattoos on Duran's forehead, and that his long hair was loose at the time of their encounter. Orozco identified Duran both at the scene and in court as the man who struck him and tried to take his keys. Duran's defense, explored by cross-examining prosecution witnesses, was that this was a case of mistaken identity and he was not the person who committed the crimes alleged against him. This contention was based on the fact that Duran has the digits "666" prominently tattooed on his forehead and no complaining witness included that information in his or her description to the police. After he was apprehended and given his *Miranda*[5] rights, Duran told one officer: "I took the car. I took the car from the old lady."

---

[5] *People v. Miranda* (2011) 199 Cal.App.4th 1403.

4

## DISCUSSION

We appointed counsel to represent Duran on appeal. After examination of the record, Duran's counsel filed an opening brief raising no issues, and asked this court independently to review the record. (*People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*).) Pursuant to *Anders v. California* (1967) 386 U.S. 738, 744 [87 S.Ct. 1396, 18 L.Ed.2d 493] (*Anders*), Duran filed a supplemental brief which (to the extent we are able to ascertain) identifies numerous possible but not arguable issues:

1. Whether the trial court erred in denying his section 1538.5 motion to suppress evidence, based on his contention that inadmissible evidence was used to obtain an arrest warrant, resulting in an unconstitutional search and seizure?

2. Whether the trial court erred by improperly admitting any evidence offered by the prosecution, all of which was fruit of the poisonous tree due to the inadmissibility and exclusion of the photographic line-up?

3. Whether the trial court erred by permitting the matter to proceed to trial at all, given the alleged constitutional violations of the Fourth and Fourteenth amendments?

4. Whether a neutral magistrate or other judicial authority oversaw the warrant process?

5. Whether Duran was improperly denied the ability to obtain trial transcripts to assist him in preparation of a motion for a new trial and/or precluded from presenting that motion verbally in May 2014?

6. Whether a detective acted within the good faith exception in obtaining an arrest warrant premised on unconstitutional identification evidence?

7. Whether Duran received ineffective assistance of counsel at the preliminary hearing because his attorney failed to object to the six-pack lineup?

8. Whether various writs previously denied by this court, are reviewable?

9. Whether Duran's continual in-court objections regarding exclusion of evidence are sufficient "to cover the primary illegality as inadmissible evidence/testimony against [Duran] in his jury trial"?

5

10. Whether, based on the totality of circumstances, witnesses' in-court identifications of Duran were premised on evidence independent of the July 21 field show-ups, and whether Duran was entitled to have counsel present during those show-ups?

We have reviewed the entire record in accordance with *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738 and have not found any arguable appellate issues. Most of the issues raised by Duran relate to his meritless contention that he was deprived of a fair trial and the action should have been dismissed because the evidence underlying his arrest and prosecution was subject to the "fruit of the poisonous tree" doctrine, i.e., must be excluded because of the impermissibly suggestive evidence contained in the photographic six-pack which the court excluded from evidence at the outset of trial.

Duran's supplemental brief does not meet his burden of demonstrating error. Judgments are presumed correct and an appellant has the burden of providing a record which clearly demonstrates error, along with reasoned argument and citations to authority to support the assertions of error. (See *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [presumption of correctness]; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [inadequate record]; *McComber v. Wells* (1999) 72 Cal.App.4th 512, 522–523 [argument must be supported by argument and citation to authority].) Apart from taking issue with the photographic array, evidence the trial court appropriately excluded, Duran does not explain why other evidence—which overwhelmingly supports his convictions—was deficient. We have examined the record and found no arguable error that would result in a disposition more favorable to Duran. (*People v. Kelly* (2006) 40 Cal.4th 106; *Wende*, *supra*, 25 Cal.3d 436.)

The remaining issues raised by Duran are similarly without merit. To the extent Duran raises issues supported by evidence outside the appellate record, such issues are not reviewable. (See *In re Carpenter* (1995) 9 Cal.4th 634, 646 [appellate jurisdiction limited to the four corners of the record on appeal].) As to other claims of error, the record discloses no petition for writ of habeas corpus, and the Federal Rules of Criminal Procedure on which Duran relies do not govern here.

6

We have reviewed the entire record in accordance with *Wende*, *supra*, 25 Cal.3d at page 441 and *Anders*, *supra*, 386 U.S. at page 744, are satisfied that Duran's counsel fully satisfied her responsibilities and find no arguable issues. (*People v. Kelly*, *supra*, 40 Cal.4th at pp. 109–110; *Wende*, at p. 441.) Accordingly, we affirm the judgment of conviction.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.