Filed 3/30/16  Sabbagh v. Davood CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ISKANDER SABBAGH et al., | B261104 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. LC099632) |
| v. | |
| SHAHROKH DAVOOD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Jr.  Affirmed.

Steven W. O'Reilly for Plaintiffs and Appellants.

Shafron & Kammer, Shelly J. Shafron and Kevin David Kammer for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiffs Iskander and Sozan Sabbagh appeal from the grant of summary judgment in favor of defendant Shahrokh Davood, who bought their home in a short sale to avoid foreclosure.  We affirm.

## BACKGROUND

### 1.      The Complaint

The operative pleading is the verified first amended complaint.  It alleges causes of action against defendant for breach of contract, fraud, rescission and specific performance.  Each cause of action rests on the following general allegations:

In early 2012, plaintiffs were in default on their mortgage payments to Bank of America.  Plaintiffs retained a broker to conduct a short sale on their behalf.  Plaintiffs made an oral agreement with defendant to sell their home in September 2012.  In early October 2012, plaintiffs met with the broker and defendant at their home to finalize their agreement.  The parties orally agreed that plaintiffs would sell their home to defendant for $196,800; they had 90 days to a year in which to buy it back at the same price; they could stay in their home if they paid defendant $1,500 a month in rent; and defendant would receive a $20,000 commission when the property was reconveyed to plaintiffs.

The broker assured plaintiffs these terms would be part of the final purchase agreement.  Plaintiffs signed and notarized the purchase agreement but did not receive a copy.  Escrow closed October 11, 2012.  On Thanksgiving Day of 2012, the broker told plaintiffs they would have to pay defendant $350,000 to repurchase their home, and that defendant would pay them $20,000 to move out.  Plaintiffs refused to move, and were told eviction proceedings were underway.

Plaintiffs allege defendant breached their oral agreement, and defrauded them, because the written purchase agreement had different terms than their oral agreement.  They also allege they may rescind the oral agreement and, in the alternative, seek specific performance of the oral agreement.

### 2.      The Court Grants Summary Judgment

The hearing on defendant's motion for summary judgment was held on August 28,

2014. The court took the matter under submission and issued its ruling granting summary judgment on September 9, 2014.

The court found the alleged oral agreement violated the statute of frauds because there was no such written agreement between the parties. Citing deposition testimony of plaintiff Iskander Sabbagh, the court found plaintiff admitted he did not discuss the oral agreement with defendant before they entered their written contract. The court also found the broker had no authority to bind defendant to the alleged oral contract.

The court also found plaintiffs' claims were barred by the doctrines of illegality and unclean hands.

We quote below from portions of the trial court's ruling.

"Here, the complaint alleges an oral agreement with the buyers of plaintiffs' property to short sale the property to the buyers and then 90 days later retain the right to repurchase the property. This type of an agreement, to repurchase property from a short sale buyer may violate [title] 18 [United States Code section] 1014, which prevents a person from making any false statement or report or willfully overvalue property for the purposes of eluding the lender. Lenders typically require parties to a short [sale] to sign an agreement attesting for example that the transaction is arm's length, that there are no collateral agreements to allow the seller or his family to continue to live on the property, that the transaction does not involve straw buying.

"Such an agreement is attached as Ex 2. Plaintiff argues that his signature on the agreement is a forgery. Even if Mr. Sabbagh's signature is a forgery which evidence of a forgery is solely based on Mr. Sabbagh's own uncorroborated testimony, enforcing an oral agreement to reconvey a property sold at a short sale is contrary to public policy. Moreover, plaintiff signed an acknowledgment that he received copies of the Sales contract and all Addenda. Defendant's Ex. 1. Further, it is undisputed that plaintiff received $5,000 in relocation expenses from the lender when they never intended to relocate. [¶] . . . [¶]

"Here, it is clear that plaintiff understood that he was doing something 'wrong' by making the agreement with defendant to short sell the property and then have it

3

reconveyed to plaintiff. Plaintiff admits in his own responses to Form Interrogatories that before the Escrow agreement was signed he was told he needed to find someone he trusted to pretend to lease the property and to put utilities in that person's name. This admission shows that plaintiff understood that he needed to conceal that he was actually retaining an interest in the property. As discussed above, it would be inequitable to enforce the agreement or to provide relief for fraud."

## DISCUSSION

### 1.    Standard of Review

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

### 2.    Plaintiffs Have Not Demonstrated Reversible Error

#### A.    Unclean hands

Plaintiffs contend the court erred by granting summary judgment based on the unclean hands defense. First, plaintiffs argue defendant did not provide a separate statement of undisputed facts. Plaintiffs offer no coherent explanation for this contention. This is one of several examples of plaintiffs' failure to give us legal authority to support their contentions. " 'The reviewing court is not required to make an independent,

4

unassisted study of the record in search of error or grounds to support the judgment. . . . [E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.]" (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

Defendant's separate statement of undisputed facts is in the record, and it appears to comply with applicable rules. Among the undisputed facts are these: "Plaintiffs received $3,000 relocation allowance from the bank and $2,000 from a government assistance program for moving costs which Sabbagh accepted at close of escrow, but did not vacate the Property. . . ." "Escrow closed on October 11, 2012, and Davood paid off the plaintiffs' lender and a judgment creditor. [¶] . . . [¶] . . . Plaintiffs refused to vacate the property, telling Davood they would only leave if he paid them $40,000. On November 27, 2012, Davood filed an unlawful detainer action against them."

Plaintiffs next contend defendant did not provide evidence to support an unclean hands defense. Plaintiffs' discussion of this point includes no citation to the record. Plaintiffs do *not* contend there was any material disputed fact concerning the unclean hands defense. The undisputed evidence summarized in the trial court's ruling includes plaintiff Iskander Sabbagh's own admissions that he knew he was doing something wrong by making the agreement with defendant to short sell the property and then have it reconveyed to himself. Mr. Sabbagh stated in a verified interrogatory response: "The broker initially told us that it would be difficult for us to stay in possession, but that changed when she contacted Mr. Davood, the buyer. The broker and the buyer said that we could stay in possession and that I should get someone that I trust and put the utilities and the lease in their name. The meeting at my house in early November was also for the broker to draw up the lease agreement, to show the house to [the] tenant and have him sign the lease. I was instructed to make it appear that I no longer live at the house."

Plaintiffs also submitted the declaration of plaintiff Sozan Sabbagh, who testified, "We were in default on our home loan in February2012. My husband had lost his job and it looked more and more like we might lose our house. . . . [¶] . . . In trying to save our

house my husband got himself involved with some shady characters and desperate situations." Mrs. Sabbagh also testified that she read and, at her husband's urging, signed a document that the broker told her the bank required, stating that she and her husband were going to vacate their home or pay $200 a day penalty. She testified further, "In November of 2012 [my husband] was involved with a new group of dangerous characters and I think that he was borrowing cash money against the house and making bad decisions. . . . On November 2, 2012, my husband was sweating and panicky about a group of people that were making a deal involving the sale of our house."

Plaintiffs cite *Mattco Forge, Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 408 for the proposition that "the unclean hands defense is improper for summary judgment." Plaintiffs accurately quote from the case, and indeed, the trial court cited other authorities urging caution in deciding an unclean hands defense as a matter of law. (See, e.g., *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 641 ["Since the doctrine of unclean hands is heavily fact dependent, it is a uniquely poor candidate to support a demurrer. Nevertheless, there have been unusual situations in which a defense of unclean hands has been established solely by the allegations of the complaint."].)

But California courts have affirmed the grant of summary judgment on the unclean hands defense where there was no material disputed fact concerning plaintiff's conduct in relation to the transaction or matter before the court. (See, e.g., *Pond v. Insurance Co. of North America* (1984) 151 Cal.App.3d 280, 289-292; *DeRosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1395-1398.) We view this also as a case presenting no material disputed fact concerning plaintiffs' unconscientious conduct and therefore find no error in the grant of summary judgment on the basis that the unclean hands defense barred all of plaintiffs' causes of action. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 56 [unclean hands is a complete defense to legal and equitable causes of action].)

6

## B.    Statute of frauds

Plaintiffs next contend the court erred by granting summary judgment based on the statute of frauds and equal dignities rule.  Plaintiffs say the court erred by finding it was undisputed that defendant never discussed an oral agreement with plaintiffs before they signed the written contract.  Plaintiffs cite Mr. Sabbagh's own interrogatory answers that he made the oral agreement with defendant "before the final papers were signed." Plaintiffs argue there was a material disputed fact whether defendant met with plaintiffs before the contract was finalized, and that disputed fact alone was sufficient to defeat summary judgment on the basis of the statute of frauds and equal dignities rule.

Plaintiffs provide no citation to any legal authorities concerning the statute of frauds.  The trial court in its decision cited provisions of the Civil Code which codify the statute of frauds.  (Civ. Code, §§ 1624, 2309.)  These statutes codify the rule that an agreement for the purchase or sale of real estate is unenforceable as a matter of law if not in writing and signed by the party to be charged.  The entire basis for the complaint in this action is that an alleged oral agreement for the sale of plaintiffs' property is enforceable.  In the absence of any legal discussion of the statute of frauds, we treat plaintiffs' challenge to the grant of summary judgment on this basis as waived. (*McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 522.)

## C.    Illegal contract

Plaintiffs contend the trial court erred in finding the alleged oral agreement was illegal because defendant did not assert illegality as an affirmative defense, citing the rule that an issue must be framed by the pleadings or it is not subject to a summary judgment motion.  However, illegality is not required to be plead in order to obtain summary judgment on that basis.  (*Kallen v. Delug* (1984) 157 Cal.App.3d 940, 948, fn. 2 ["Since an illegal contract is void and public policy considerations are involved, illegality need not be pleaded in the answer or even argued to preserve the issue on appeal, so long as the illegality is apparent on the face of the contract or evidence presented to prove the contract discloses the illegality."].)

7

Plaintiffs next contend defendant did not recite evidence in his separate statement of undisputed facts of a violation of any federal or state banking law. That is not correct. Defendant provided a copy of the short sale agreement between plaintiffs and Bank of America as an exhibit in support of his motion for summary judgment and cited it in his separate statement. Defendant also quoted in his memorandum of points and authorities a portion of the short sale agreement which describes plaintiffs' responsibilities, including that plaintiffs were required to sell the property in an arm's length transaction: "You may not have any expectation that you will be able to buy or rent your house back after the closing. Any knowing violation of the arm's length transaction prohibition may be a violation of federal law." Defendant argued in the summary judgment motion that, "Under [title] 18 [United States Code section] 1014, a false statement to a federally insured lender to induce action, such as agreement to a short sale, is a felony."

Again, plaintiffs' discussion of this point in their appellate briefs includes no citation to any evidence in the record. Again, plaintiffs do not contend there was any material disputed fact concerning the illegality of the alleged oral contract. (Plaintiffs claimed in the trial court that Mr. Sabbagh's signature on the short sale agreement was forged but they do not assert that on appeal.) Again, plaintiffs provide no citation to any legal authorities concerning the unenforceability of an illegal contract. In the absence of any citation to or discussion of the law bearing on the question whether the alleged oral contract was illegal and against public policy as an attempt to fraudulently obtain relocation benefits and remain in their home, we also treat plaintiffs' challenge to the grant of summary judgment on this basis as waived. (*McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 522.)

## DISPOSITION

The judgment is affirmed. Respondent is to recover his costs on appeal.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.                    FLIER, J.

8