Filed 3/4/22  P. v. McCoy CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G057890 |
| v. | (Super. Ct. No. M-13757-1) |
| STEVEN McCOY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Jeannie M. Joseph, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 2013, Steven McCoy was committed for an indeterminate term to the Department of State Hospitals (DSH) under the Sexually Violent Predator Act (SVPA). (See Welf. & Inst. Code, § 6600 et seq.)[1] In 2018, McCoy petitioned the superior court for conditional release. (§ 6608.) After an evidentiary hearing, the court denied the petition, finding by a preponderance of the evidence it is likely McCoy "will engage in sexually violent criminal behavior, due to his diagnosed mental disorder, under supervision and treatment in the community." (§ 6608, subd. (g).)

McCoy appeals from the trial court's order. He argues insufficient evidence, numerous evidentiary errors, and cumulative prejudice. We affirm the order.

I

FACTS AND PROCEDURAL BACKGROUND

On March 26, 1990, sometime in the afternoon, Lisa H. responded to a knock on her front door. Lisa was 11 years old, home sick from school, and alone. Lisa looked through the peephole and saw a man (later identified as McCoy) dressed as a UPS driver holding a large brown box. Lisa opened the door. McCoy said the package was for Lisa, stating her full name. McCoy had Lisa step outside onto the porch to sign a piece of paper.

McCoy told Lisa H. the box was burning, and he had Lisa go to the kitchen to get a glass of water. McCoy poured the water on the box. McCoy told Lisa to open the box, which he described as a care package, to check for damages. The box contained several items including a sheet, and a box of Captain Crunch cereal.

McCoy had Lisa H. get another glass of water. When Lisa returned, McCoy was inside the home. McCoy closed the front door and pulled a large knife from his back pocket. McCoy pointed the knife at Lisa and directed her to her parents'

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

bedroom. McCoy threatened to scar Lisa's face and told her she was "'pissing me off. If you don't cooperate, I'm going to hurt you.'" McCoy told Lisa "to 'get under the covers and take her clothes off.'" Lisa asked McCoy if he was going to rape her, and McCoy responded: "'Right, I'm really going to rape an 11-year-old girl.'" McCoy told Lisa he had been watching her, he knew where she went to school, and he knew who her friends were. McCoy left the room and eventually returned naked.

McCoy got on top of Lisa H. and pulled off her skirt and underwear. McCoy rolled Lisa on top of the sheet from the box he brought to the house. McCoy kissed Lisa's breasts and kissed her between her legs. McCoy digitally penetrated Lisa. When Lisa screamed in pain, McCoy put his hand over her mouth. McCoy orally copulated Lisa. McCoy put his penis against Lisa's vagina and pressed, but McCoy could not get his penis completely inside her vagina. McCoy told Lisa he would hurt her if she told anyone. McCoy said: "'I could kill you like other rapists, but I'm not that kind of guy, I don't want to do that.'"

McCoy left the room and returned wearing a change of clothes. When McCoy left the home, he took the sheet he had brought with him, but he left the knife behind. After McCoy left the home, Lisa H. called her mother, who quickly came home and called the police. Lisa was taken to the hospital for a sexual assault examination; there were injuries to Lisa's genitalia consistent with a sexual assault. Semen was found on a sheet, in Lisa's vagina, and on her panties.

*Police Investigation*

A police officer recalled McCoy lived nearby and had been a suspect in an earlier molestation of two young girls. The officer assembled a photo lineup, which included McCoy's photograph. Lisa H. said McCoy looked like the person who had assaulted her. Police went to McCoy's apartment. McCoy said he was an ex-cop, and he recited the *Miranda* rights from memory. McCoy "denied any involvement in any type

3

of sexual incident."

During the investigation, police searched McCoy's home. Police found a wallet-sized school photograph of Lisa H. On the back of the photograph were the handwritten words: "'March 26, 1990, Steve, you are a kind, caring and gentle man, thank you for making my first time so wonderful. Lisa.'" Lisa later said the writing was not hers and McCoy likely took the photograph from her parent's bedroom. Police also found a pair of Lisa's underwear, one of her shirts, and a tan men's shirt, which Lisa later identified as the shirt McCoy had worn. Lisa said McCoy had either pinned or taped something to "the shirt that said UPS on it." Police found the paper Lisa had signed for the purported delivery. Police searched dumpsters near McCoy's apartment and found other items linked to Lisa's sexual assault (e.g., a box with a burn mark on it).

Police spoke to McCoy's roommate John E., who said a 15-year-old girl, Kristina P., had lived at the apartment and often ate Captain Crunch. John said Kristina was having problems with her family and McCoy offered to let her stay in the apartment. John said McCoy had exhibited a sexual interest in Kristina.

Police spoke to Kristina P., who was at juvenile hall. Kristina said she had been kicked out of her home. Kristina said McCoy offered her a private room and food in exchange for cleaning the apartment. Kristina said she always kept her room locked. Kristina said she was concerned because on the first night she stayed at the apartment, McCoy gave her a large butcher knife. McCoy told Kristina: "'If I dream about you sexually, you can take care of me with this.'" Police showed Kristina the knife recovered from Lisa H.'s house, and Kristina identified it as the same knife that McCoy had given her. Kristina said she had a friend named Sakura A., who lived across from McCoy's residence.

Police spoke to Gerard A., Sakura A.'s father. Gerard said Sakura had concealed a runaway girl in her closet. Gerard said McCoy had taken both teenage girls out on a shopping spree and had spent several hundred dollars.

4

*Criminal Proceedings*

In 1991, Lisa H. testified at a preliminary hearing. McCoy later pleaded guilty to forced oral copulation, forced lewd and lascivious acts with a child, sexual penetration, and rape by force.

In a preplea report, a probation officer wrote:

"The defendant denied that his actions in the immediate matter were premeditated. He stated that prior to the assault he was returning home from lunch at a nearby restaurant, when he saw the victim on her front porch talking to two girls. He stated that he had no prior knowledge or contact with her at that time. He offered, 'I don't know what came over me,' yet admitted that he went home, collected items and placed them in a box, and returned to the victim's home in the same hour. He stated he had 'no idea' regarding his motivation for the crime. He denied participating in any like behavior in the past, and denied that his sexual preference was for children. Instead, he offered the belief that the victim was 'much older' than she was, possibly 18 or 19. The defendant supported his belief by stating he did not have his glasses on, and that his 'eyesight is not that good.' (It should be noted, however, that when interviewed . . . defendant's ex-wife . . . expressed her surprise upon seeing the defendant wearing glasses in a picture published in the paper, in that he had surgery several years prior eliminating his need for corrective lenses.)"

At the 1991 sentencing hearing, Louise B. testified about a sexual assault that occurred in Colton on March 31, 1981, when she was eight years old. Louise and her friend were in recess at school. A man offered the girls $5 each if they would jump over the fence and come into his home. Once inside, the man had the girls take off their pants and lay on the bed. The man laid between the girls and rubbed his penis against their thighs. When he was done, the man used a washrag on the girls to wipe off their legs. The man told the girls if they told anyone what happened he would come after them. Louise told the principal what had happened when she returned to school. The school

5

had been looking for the girls for two hours.

Shortly before testifying at the sentencing hearing, Louise B. was shown a six-pack photo lineup; she identified a man who was not McCoy. While on the witness stand, Louise positively identified McCoy. Louise said she was able to identify McCoy "because when I had looked directly -- when I had first seen him come in, I had, you know, my mind, I had a flashback of what had happened."

Larry P. testified at the sentencing hearing. Larry owned a house in Colton next to a school in March 1981. McCoy worked for Larry and lived with him at that time. In 1981, police contacted Larry and asked him about "an investigation regarding a child incident." Larry confronted McCoy, who said he would contact the district attorney's office and clear it up. In early April, police contacted Larry about a car McCoy had abandoned at a nearby gas station.

McCoy testified at the sentencing hearing on his own behalf. McCoy said Larry told him about the 1981 incident, but he never heard from the police. McCoy testified he had never seen Louise B. before the hearing, and he never invited anyone to come over the fence.

An investigator testified at the hearing. The investigator had contacted Louise B.'s mother, who remembered the incident. The mother had talked to the police and "asked that the incident be dropped, that she did not want it to be taken any further, because she did not want her daughter to ever testify in court about it."

At the end of the hearing, the court looked at the photo lineup shown to Louise B. and said the pictures were so similar, "I would have difficulty with that myself, even though I have been looking at [McCoy] on several occasions lately." As to the 1981 sexual assault, the court found "the circumstantial evidence is overwhelming that it was Mr. McCoy." The court found "by a preponderance of the evidence that the incident did occur as testified to by [Louise B.], and that it is sufficient for sentencing purposes."

The court said: "The result of that, of course, is that it undermines his

6

principal position . . . that is his manic-depressive state caused a one-time incident to occur in 1990; instead it convinces the court that he is in fact a pedophile, a child molester, who has engaged in a course of conduct over the years.  And in addition there's a third incident, which is set forth in the probation report, involving a young girl, age 15 [(Kristina P.)], . . . that's in the probation report, about what he did with her when she was a runaway and he picked her up and had her stay at his place."

The trial court imposed a 36-year prison sentence.

*SVP Proceedings*

In 2010, prior to McCoy's release from prison, the district attorney filed a petition to commit McCoy as an SVP.  In 2013, a jury found McCoy to be an SVP and the court committed him for an indefinite term.

In 2018, McCoy filed a petition for conditional release.  (§ 6608.) McCoy's petition was filed with the recommendation and concurrence of the DSH.  The district attorney filed an opposition to the petition.

In 2019, the trial court held a lengthy hearing.  The court admitted into evidence:  redacted police reports; the preliminary hearing transcript; the preplea report; the sentencing hearing transcript; and redacted Penile Polysomnography (PPG) and polygraph tests performed at Coalinga State Hospital (Coalinga).  Twelve expert witnesses testified (the evidence will be summarized in the discussion section of this opinion).  The court denied the petition for conditional release.

II

DISCUSSION

On appeal, McCoy argues:  A) there is insufficient evidence to sustain the trial court's denial of his petition for conditional release; B) the court committed several evidentiary errors during the hearing; and C) cumulative prejudice.

7

## A. *Sufficiency of the Evidence*

If a trial court denies a petition for conditional release after an evidentiary hearing the standard of review is for substantial evidence. (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1407.) In SVP proceedings, "'"courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction."'" (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088.)

In this part of the discussion, we will: 1) review general principles of law; 2) summarize the relevant proceedings; and 3) apply the law to the relevant facts.

### 1. *General Principles of Law*

In a sufficiency of the evidence review, we look at "'the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We presume in support of the judgment every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An SVP can "petition the court for conditional release . . . ." (§ 6608, subd. (a).) "The court shall hold a hearing to determine whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." (§ 6608, subd. (g).)

8

## 2. *Relevant Proceedings*

Dr. Kathleen Longwell testified for the prosecution at the hearing on the petition for conditional release. Longwell is a psychologist who has worked under contract for the DSH. Longwell has performed thousands of SVP evaluations. Longwell testified that part of the treatment of SVPs involves their disclosure of prior acts of sexual deviance. Longwell testified full disclosure is important so SVPs can adequately address their risk factors and "we can reduce their risk of sexual re-offense."

In 2013, Dr. Longwell conducted an SVP evaluation of McCoy. Longwell was made aware of the details of the 1990 predicate offense (Lisa H.'s rape), the 1990 interaction with a 15-year-old girl (Kristina P.), and the 1981 alleged sexual assault of two young girls (Louise B. and her friend).

When Dr. Longwell interviewed McCoy in 2013 about the 1990 rape, McCoy said the reason he raped Lisa H. was due to stress, he had been drinking, and he had not taken his bipolar disorder medication. McCoy said he saw Lisa outside and he thought she was 18 or 19 years old. McCoy said, "that was the first time he saw her." McCoy said he found Lisa attractive, he wanted to have sex with her, but he realized, "'She probably won't have sex with me voluntarily.'"

McCoy told Dr. Longwell he put together the UPS delivery idea just prior to the rape of Lisa H. McCoy admitted bringing the knife, but he denied threatening Lisa with it. McCoy said, "when he was engaging in sexual activity with her, that he started to realize that she was probably younger than what he had thought before." McCoy denied knowing Lisa was 11 years old before the rape, or at any time. McCoy denied that he said, "'What am I going to do? Do you think I am going to rape an 11-year-old.'" McCoy admitted bringing a sheet so he would not leave DNA. McCoy said he did not ejaculate, nor did he penetrate Lisa. McCoy admitted taking Lisa's school picture and writing on the back of it. McCoy admitted Kristina P. lived in his home, that he gave her a knife, and he told her, "'If I have sexual thoughts about you, here is a knife to use to

protect yourself.'" McCoy said he intended it as a joke. McCoy said as to the 1981 alleged sexual assault, he knew nothing about it until the 1991 sentencing hearing.

Dr. Longwell diagnosed McCoy in 2013 with "pedophilic disorder, sexually attracted to females, nonexclusive type, . . . bipolar 1 disorder, and . . . alcohol use disorder." In part, Longwell based this on: her belief that the 1981 incident occurred; McCoy had sexual fantasies and urges towards Lisa H., based on the planning involved in the 1990 offense; and sex offenders "don't commit that level of horrific, planned, sexual offense against a child, a stranger child, as their first pedophiliac act." Longwell noted similarities between the 1981 and 1990 incidents: they both involved a ruse or manipulation; McCoy took measures to avoid leaving DNA; and in both cases McCoy threatened the children if they told anyone.

As to Lisa H.'s rape, Dr. Longwell said McCoy "minimized his degree of sexual deviance involved in this, and he minimized his degree of violence involved in it and the degree of planning." Longwell testified based on research and experience, that "one of the hallmarks of" sexually violent criminals "is to take a trophy with them." Longwell said McCoy's taking the school picture of Lisa H. with him could be considered a trophy.

Dr. Longwell reviewed McCoy's treatment records from Coalinga since 2013, before testifying at the hearing on the petition for conditional release. Longwell "did not see where [McCoy] had changed his position on what he is admitting and not admitting to." Longwell testified: "Based on my review of the reports, subsequent to my evaluation of him, I do not -- I did not see that he has learned anything of importance that would be important for treatment and which would reduce the risk of sexual recidivism." Longwell said there were "important factors . . . that need to be addressed in treatment, have not been addressed, because Mr. McCoy has continued to deny important factors involved in his crimes and his sexual deviance." Longwell noted McCoy continues to attribute "the 1990 offense solely to bipolar disorder, alcohol use, and stress, without it

10

indicating a sexual deviancy also involved in it."

Dr. Longwell opined, "I think that he still meets the criteria of SVP, and he is not ready for either conditional or unconditional release. Because I don't think -- I don't see that he has addressed his risk . . . factors for sexual re-offense or sexual deviancy . . . ." Longwell said, "his risk factors being that he had -- that he has a pedophilic disorder, that he also has a tendency toward arousal to forced, violent sex, and that those things need to -- need to be addressed before he should be considered for either conditional or unconditional release." Longwell testified, "I don't believe that he -- that he has adequately addressed his sexual deviancy to be able to be managed in a [conditional release program (CONREP)] at this point."

Dr. Cecilia Groman is a psychologist and clinical director for Liberty, the provider of CONREP for the state. Groman testified about how Liberty assists SVPs in their reentry into the community. As to McCoy, Groman interviewed him in 2017 and 2018. Groman said McCoy continued to deny knowing Lisa H. was 11 years old; McCoy said he thought she was 18 or 19 years old. Groman testified regardless of whether there is a conviction, it is important for SVPs to acknowledge their past.

When evaluating candidates for CONREP, Dr. Groman looks at whether they have completed their treatment (advanced to module four), and whether they have gone through the required assessments, including a sexual history polygraph. Groman opined McCoy was not ready for conditional release because he had not yet entered module four, nor had he completed a sexual history polygraph (McCoy had completed other kinds of polygraph tests).

Orlando Cruz is a facilitator at Coalinga's Sex Offender Treatment Program (SOTP). Cruz testified McCoy was doing well and was a model patient. Eliseo Garcia is a behavioral specialist. Garcia testified McCoy was doing well in his substance abuse and positive psychology classes. Garcia described McCoy "as rule-abiding, respectful, helpful." Six psychologists opined McCoy was suitable for conditional release.

11

### 3. Analysis and Application

At the conclusion of the hearing, the trial court summarized the evidence. The court found McCoy "does have a deviant sexual interest and it is in young girls." The court said it did not matter if McCoy's disorder was pedophilia, paraphilic disorder, or hebephilia. Regardless, the court found McCoy has "a deviant sexual interest in young girls, it seems like as early as 9 and as late as 15."

The court said: "I do think petitioner, Mr. McCoy, should be commended for addressing your bipolar, which I do think contributed to your crimes, for addressing your alcohol use disorder, which I do think contributed to the crime, and your early and sustained participation in the SOTP, and your good behavior overall. I think those are all really good factors for you."

However, the court said McCoy "does seem to continue to lie or to try to offer mitigation for his qualifying offense." For instance, McCoy continued to maintain he did not know Lisa H.'s age, although "the police record made clear that Mr. McCoy knew Lisa's age was 11 years old when he raped her." McCoy also continued to maintain "the crime wasn't planned," although there was significant evidence to the contrary, including his statements to Lisa "that [he] had been watching her for some time." Further, McCoy "still doesn't admit that he threatened Lisa H. with a knife." McCoy also continued to deny penetration and/or ejaculation, although there was evidence of his semen in Lisa's vagina. Further, the court noted it gave credence to the judge's finding at the 1991 sentencing regarding the 1981 incident.

The trial court ruled, "I believe petitioner has failed to address some of his dynamic risk factors in treatment by denying important facts of his qualifying crime and other deviant sexual acts. . . . [¶] . . . [¶] So I am going to deny the petition."

In this case, Dr. Longwell opined McCoy was not suitable for release due to his failure to address his dynamic risk factors, and this failure would present a risk McCoy would commit another sexually violent offense if conditionally released. Dr.

12

Groman, who is the clinical director of Liberty, the organization that supervises SVPs on conditional release, similarly opined McCoy was not suitable for release. The testimony of Drs. Longwell and Groman supports the court's finding that McCoy "would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." (§ 6608, subd. (g).)

Thus, we find substantial evidence to support the trial court's denial of McCoy's petition for conditional release.

McCoy argues six psychologists opined he could be safely released into the community on conditional release. But it is not our role to reweigh conflicting expert opinions. (See *People v. Poe* (1999) 74 Cal.App.4th 826, 831 ["It is not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions"].) Our role is to review the record to see if it discloses substantial evidence to support the trial court's ruling. Here, there is substantial evidence.

McCoy argues the trial court's ruling was a "dismissal" of the safety record of Liberty CONREP, noting there was testimony that CONREP had no SVPs that had committed further sexual crimes under its supervision. Again, it is not our role to reweigh the evidence, but in any event, the court did not dismiss Liberty's track record. Indeed, the court explicitly stated: "I know that Liberty CONREP does have a very good track record, in terms of no . . . offenses for people under their care. But I have to assume that's because they have these very high standards, and they are doing a very good job. But if this program itself thinks that petitioner is not ready, . . . I mean, that does strongly resonate with the court as important."

McCoy also argues the trial court "ignored" test results from Coalinga indicating a low level of risk that he would reoffend. Psychologist Dr. Amy Phenix testified McCoy had a low STATIC-99 score, which is a predictive test for recidivism. Once again, we cannot reweigh the evidence, but in any event, the court factored the test

13

results into its analysis: "It is important to note that in this stage, in 2013, Mr. McCoy was a 1 on the static-99. He was already low on the risk for recidivism rate. Yet, Dr. Longwell still found him to be satisfying criteria . . . of the sexually violent predator act, in that he was still likely to engage in sexually violent criminal behavior."

McCoy argues *People v. Rasmuson* (2006) 145 Cal.App.4th 1487, compels a different result. We disagree. In *Rasmuson*, a trial court denied an SVP defendant's petition for conditional release. (*Id*. at p. 1491.) The defendant had presented the testimony of eight mental health experts who all agreed defendant would not be a danger to the community if conditionally released. (*Id*. at pp. 1492-1499.) The Court of Appeal reversed because: "Against this weighty and impressive evidence, the People failed to present a scintilla of evidence that appellant would likely reoffend." (*Id*. at p. 1508.)

The prosecution in this case presented more than "a scintilla of evidence" that McCoy would likely reoffend: the opinion testimony of two expert witnesses. Thus, *Rasmuson* is readily distinguishable and does not alter our analysis.

## B. *Evidentiary Rulings*

A trial court's evidentiary rulings are reviewed for an abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197 ["On appeal, a trial court's decision to admit or not admit evidence . . . is reviewed only for abuse of discretion"].) A trial court's exercise of its discretion will be upheld on appeal unless it is shown that the court acted ""in an arbitrary, capricious or patently absurd manner."" (*People v. Williams* (2008) 43 Cal.4th 584, 634-635.)

A judgment cannot be reversed on appeal because of the erroneous admission or exclusion of evidence unless the defendant has shown a miscarriage of justice. (Evid. Code, §§ 353, 354.) "'[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the

14

appealing party would have been reached in the absence of the error.'" (*People v. Richardson* (2008) 43 Cal.4th 959, 1001.)

McCoy contends the trial court: 1) failed to properly redact the police reports; 2) erroneously admitted or excluded expert testimony (*People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*); 3) erroneously admitted PPG test results; 4) erroneously admitted polygraph test results; and 5) improperly sustained leading objections.

We shall address McCoy's contentions as best we can, but we note from the outset that in numerous instances McCoy fails to identify in the appellant's opening brief (AOB) the precise page numbers where the alleged evidentiary errors occurred. Rather, McCoy often raises an issue then references multiple pages from the record without specificity. Further, McCoy also fails in many instances to identify an objection he made in the trial court based on the same grounds he is now raising on appeal.

An appellant must: "Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) As the reviewing court, we will not perform an independent, unassisted review of the record in search of an alleged error. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522-523.)

"When an objection is made to proposed evidence, the specific ground of the objection must be stated. The appellate court's review of the trial court's admission of evidence is then limited to the stated ground for the objection." (*People v. Kennedy* (2005) 36 Cal.4th 595, 612 ["'"the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal"'"], disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 458-459.)

15

*1. Alleged Failure to Properly Redact Police Reports*

McCoy contends:  "The trial court admitted inadmissible prejudicial hearsay by failing to properly redact government exhibit 1 — the police reports." (Capitalization omitted.)  We disagree.

Generally, the California Evidence Code applies at SVP proceedings, including the prohibition against hearsay evidence.  (Evid. Code, § 1200.)  However, the Legislature has created a special hearsay exception that exclusively applies in SVP proceedings, which allows for the admission of multiple levels of hearsay through documentary evidence.  (*People v. Otto* (2001) 26 Cal.4th 200, 206-208.)

"The existence of any prior convictions may be shown with documentary evidence.  The *details underlying the commission of an offense that led to a prior conviction*, including a predatory relationship with the victim, *may be shown by documentary evidence*, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals."  (§ 6600, subd. (a)(3), italics added.)[2]

"Although defendants in civil SVP proceedings do not have a Sixth Amendment right of confrontation, they do have a due process right of confrontation. The two rights are not coextensive.  [Citations.]  Due process under the SVPA 'is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings.'"  (*People v. Fulcher* (2006) 136 Cal.App.4th 41, 55.)

Under section 6603 (a)(3), "the Legislature apparently intended to relieve victims of the burden and trauma of testifying about the details of the crimes underlying the prior convictions.  Moreover, since the SVP proceeding may occur years after the predicate offense or offenses, the Legislature may have also been responding to a concern that victims and other percipient witnesses would no longer be available."  (*People v.*

---

[2] Hereinafter referred to as section 6600 (a)(3).

*Otto*, *supra*, 26 Cal.4th at p. 208.)

Under section 6600 (a)(3), police reports and probation reports may be admitted into evidence when offered to prove the details of a prior conviction, but the statute does not allow for the introduction of hearsay evidence to prove the details of nonpredicate offenses under the SVPA, or alleged offenses that did not result in a conviction. (*People v. Burroughs* (2016) 6 Cal.App.5th 378, 409-411.)

Here, before McCoy's hearing for conditional release, the prosecution sought to admit (as Exhibit One) the certified police reports of the predicated offense (the 1990 rape of Lisa H.). Exhibit One is nearly 300 pages. The police reports are largely written in single-spaced narratives, there are multiple supplemental reports, copies of photographs, etc. The prosecutor noted while investigating the rape of Lisa H., the police spoke to multiple witnesses, including Kristina B. The prosecution argued Kristina's statements were "vital" to McCoy's conviction (through a guilty plea) and were admissible hearsay under section 6600 (a)(3). McCoy argued Kristina's statements were inadmissible.

The trial court noted, "Christina P. is on the People's witness list and so she might be testifying. So there's a whole other avenue for which those statements can come in. So some of this we can talk about, but I don't know if we can make a final decision until we know what happens."[3] The court stated, "It probably makes more sense for [McCoy's counsel] to identify those specific documents that you think might need redaction or would be admissible."

What followed was a lengthy discussion, which spanned about 100 pages in the reporter's transcript (RT), in which McCoy's counsel suggested redactions on various

---

[3] The name Kristina is sometimes spelled Christina in the record. Kristina did not testify at the hearing on the petition for conditional release, nor did any of the other lay witnesses mentioned in the statement of facts.

grounds. The prosecutor either agreed or disagreed and the court then made numerous evidentiary rulings. Included in the record on appeal is the redacted version of Exhibit One (the 1990 police reports), which was admitted into evidence and identified on appeal as the supplemental clerk's transcript (SCT).[4]

On appeal, McCoy argues: "the trial court erroneously failed to exclude . . . the second paragraph on 1SCT 30, the first paragraph on 1SCT 49, the paragraph that starts at the bottom of 1SCT 59 and extends to the top of 1SCT 60, the paragraph that starts at the bottom of 1SCT 61 and extending through 1SCT 66, pages 142-143, and everything from 1SCT 154 through 1SCT 157, and 1SCT 164-165." (Fns. omitted.)

There are at least two problems with this approach. The first is McCoy references pages from the police reports (in the SCT), but he does not link this to the evidentiary rulings by the trial court (in the RT). In other words, McCoy has failed to provide record citations as to where in the record he objected to the admission of evidence on the same grounds he is now raising on appeal. The other problem is when McCoy references an entire page or multiple pages in the SCT, he fails to identify what specific hearsay statements within those pages he is now challenging on appeal.

This court is not obligated to search the record in support of McCoy's contentions. (See *McComber v. Wells*, *supra*, 72 Cal.App.4th at pp. 522-523.) Nonetheless, to the extent we are able, we will analyze those alleged evidentiary contentions McCoy has adequately identified and preserved for appellate review.

The second paragraph on page 30 of the SCT states: "Other Investigators . . . had also heard the radio traffic concerning the incident, and recalled that a subject name Steven McCoy lived on Stanford in the area of the assault and would be a good suspect, because of prior incidences involving his mental state and his possible attempt to

_____

[4] Other documents admitted into evidence under section 6600 (a)(3) include the preplea report as well as the transcript of the 1991 sentencing hearing. McCoy does not challenge the admission of these documents on appeal.

18

molest a couple of teenage girls. Investigator Cain gave me a photo line up containing arrestee McCoy, and I took the line up with me to the Stanford address."

The trial court saw no "issue with paragraph 2 in particular. There's no statements of witnesses in there. It is regarding what the police are doing and why they are focusing on Mr. McCoy and providing a lineup."

Within its discretion, the court reasonably determined the challenged paragraph fell within ambit of the SVP exception for documentary evidence. (§ 6600 (a)(3) ["details underlying the commission of an offense that led to a prior conviction"].) To the extent the paragraph includes statements regarding an offense that did not result in a conviction, the statements appear to be relevant as to their effect on the listener (the investigating officer) rather than their truth. (See *People v. Montes* (2014) 58 Cal.4th 809, 863 ["an out-of-court statement can be admitted for the nonhearsay purpose of showing that it imparted certain information to the hearer, and that the hearer, believing such information to be true, acted in conformity with such belief"].)

The first paragraph on page 49 of the SCT states in part: "On 3/26/90, at approximately 1630 hours, I listened to a radio call . . . concerning an assault. Upon listening to the suspect description . . . , and the alleged crime at this point, I recognized that to be very close to a subject which we have had contact before named Steven McCoy. I was aware of Mr. McCoy's residence due to several reports which had been filed identifying him as a victim in at least one and suspect in several others."

The paragraph at issue is the first paragraph in an 18-page supplemental police report. At the pretrial hearing, McCoy's counsel said, "I am objecting to the supplemental report. And we can go through it piecemeal, if the court wants to." The trial court responded, "If you have a specific part of it that you think is inadmissible, I think that is what is important." McCoy then identified specific sentences or paragraphs in the supplement report, some of which the court redacted.

However, McCoy never identified the first paragraph on the first page of

the 18-page supplement police report as one of the paragraphs that needed to be redacted (as he now urges on appeal). Thus, this alleged error has been forfeited. (See *People v. Anderson* (2020) 9 Cal.5th 946, 961 [the failure "to object at trial to a purportedly erroneous ruling forfeits the right to challenge that ruling on appeal"].)

The paragraph that starts at the bottom of page 59 and extends to the top of page 60 in the SCT states, in part: "I asked [McCoy's roommate] if he had ever seen McCoy exhibit any interest in young females. [John E.] immediately commented that he has . . . . McCoy had gone so far as to tell [John E.] that his intention was to get Kristina, who was only 15 years old, very drunk and then he was going to have sex with her."

The trial court denied McCoy's motion to redact the paragraph. The court ruled, "given that it is in the certified record relating to the investigation of the underlying offense, given that it relates to the police's investigation of whether or not the relationship of Lisa H. was predatory, and the statements of [John E.], who apparently -- it looks like lived with [McCoy], and his statements, I think falls within there. But -- so I am going to allow this to be admitted into evidence."

Again, within its discretion, the court reasonably determined the challenged paragraph fell within ambit of the SVP exception for documentary evidence. (§ 6600 (a)(3) ["details underlying the commission of an offense that led to a prior conviction"].) To the extent the paragraph includes statements regarding an offense that did not result in a conviction, the statements appear to merely suggest McCoy intended to—but did not actually commit—a sexual assault against Kristina. That is, the statement was apparently not offered for the purpose of proving *an offense* for which McCoy was never convicted. (See *People v. Burroughs*, *supra*, 6 Cal.App.5th at pp. 409-411.) Therefore, the challenged paragraph does not violate section 6600 (a)(3).

McCoy challenges, "the paragraph that starts at the bottom of 1SCT 61 and extending through 1SCT 66." But there is not one "paragraph" that runs from page 61 through page 66. Indeed, there appear to be well over 20 paragraphs of varying length,

20

some of which are redacted. McCoy further challenges "pages 1SCT 142-143, and everything from 1SCT 154 through 1SCT 157, and 1SCT 164-165." (Fn. omitted.)

On two of these pages are copies of photographs, but on the remaining 13 pages there are dozens of single-spaced paragraphs, some of which are redacted. McCoy has failed to identify which portions of the challenged pages constitute error, nor has he identified where he lodged an objection, nor has he provided a reasoned argument as to how the trial court committed a particular error under section 6600 (a)(3).

Thus, these alleged evidentiary errors have been forfeited for purposes of appeal. (See *County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 861 ["'We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' [Citations.] Further, we may treat a point that is not supported by cogent legal argument as forfeited"].)

In sum, we find no abuse of discretion as to the trial court's evidentiary rulings concerning the police reports admitted under section 6600 (a)(3).

*2. Expert Testimony (alleged* Sanchez *errors)*

McCoy contends the trial court erroneously admitted and/or excluded hearsay evidence in violation of our Supreme Court's holding in *Sanchez*. We disagree.

"Hearsay" is defined as "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Hearsay is ordinarily "inadmissible." (Evid. Code, § 1200, subd. (b).) Further, lay witnesses can only testify about matters within their personal knowledge. (Evid. Code, § 702, subd. (a).)

As for expert witnesses, these limitations are less stringent. "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) "An expert may express an opinion on 'a subject

21

that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' [Citation.] In addition to matters within their own personal knowledge, experts may relate information acquired through their training and experience, even though that information may have been derived from conversations with others, lectures, study of learned treatises, etc." (*Sanchez*, *supra*, 63 Cal.4th at p. 675.) "[A]n expert's testimony concerning his general knowledge, even if technically hearsay, has not been subject to exclusion on hearsay grounds." (*Id*. at p. 676.)

In *Sanchez*, the California Supreme Court drew a distinction between an expert's general knowledge within his or her field of expertise, and "*case-specific* facts about which the expert has no independent knowledge." (*Sanchez*, *supra*, 63 Cal.4th at p. 676.) "What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at p. 686.)

Prior to *Sanchez*, jurors were routinely admonished that case specific facts (introduced through expert testimony) were not being offered for their truth, but the Court rejected this paradigm: "Once we recognize that *the jury* must consider expert basis testimony for its truth in order to evaluate the expert's opinion, hearsay and confrontation problems cannot be avoided by giving a limiting instruction that such testimony should not be considered for its truth." (*Sanchez*, *supra*, 63 Cal.4th at p. 684, italics added.)

*Sanchez* applies in civil proceedings, including SVP proceedings, but when a matter is tried before a court (rather than a jury), then there is a presumption "the trial court ignored material it knew was inadmissible under *Sanchez*." (*People v. Presley* (2021) 65 Cal.App.5th 1131, 1141 (*Presley*).) In *Presley*, the prosecution filed a petition to commit defendant as an SVP. "Invoking *Sanchez*, defendant filed a pretrial motion requesting exclusion of case-specific facts (not otherwise admissible) contained in hearsay statements on which any expert testimony would be based." (*Id*. at p. 1135.) The court ruled, "because the proceeding was 'a court trial,' 'not a jury trial,' the trial

22

court would be able to 'differentiate what should be and what should not be admissible,' and would 'make the differentiation as the evidence [came] in.'" (*Ibid.*) The trial court committed defendant as an SVP for an indeterminate term. (*Id*. at p. 1139.)

The *Presley* court affirmed defendant's SVP civil commitment. (*Presley*, *supra*, 65 Cal.App.5th at p. 1144.) Given there was a court trial rather than a jury trial, the appellate court rejected defendant's contentions regarding any alleged *Sanchez* errors. (*Id* at. pp. 1142-1143.) "That the trial court may have *heard* inadmissible case-specific hearsay regarding defendant, does not overcome the presumption that the trial court applied *Sanchez* and properly ignored such material." (*Id*. at p. 1143.) "Further, the expert opinion testimony here drew on multiple sources of information, not solely the case-specific facts that defendant challenges on appeal." (*Ibid.*)

"'"'A trial judge hears many items during the course of a trial which are inadmissible, and [s]he is called upon to rule on the admissibility of numerous evidentiary matters. The fact that [s]he has heard these things does not mean that [s]he cannot divorce them from [her] mind.' [Citations.]" [Citation.] "'As an aspect of the presumption that judicial duty is properly performed [(Evid. Code, § 664)], we presume . . . that the court knows and applies the correct statutory and case law [citation] and is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process.' [Citation.] Stated another way, a trial court is presumed to ignore material it knows is incompetent, irrelevant, or inadmissible." [Citation.] "Only proof that the evidence actually figured in the court's decision will overcome these presumptions. [Citations.] Clearly, the mere fact that the court heard or read the evidence is not sufficient to overcome the presumption."'" (*Presley*, *supra*, at pp. 1142-1143.)

McCoy argues: "The government presented a substantial amount of inadmissible case-specific hearsay." But once again, McCoy repeatedly cites to

23

numerous pages in the voluminous record without stating on which page an objection was made on the grounds he is now raising on appeal.

In any event, assuming for the sake of argument the trial court admitted case-specific hearsay statements through the testimony of experts in violation of *Sanchez*, this does not necessarily demonstrate an error when a jury was not acting as the trier of fact. (See *Presley*, *supra*, at pp. 1142-1143.) That is, McCoy must additionally show that the challenged evidence "figured in the court's decision." (See *Ibid*.)

In this case, the court provided a thorough analysis of its decision and it does not appear the court relied on case-specific hearsay evidence admitted in violation of *Sanchez*. For instance, the court explicitly referenced the 1981 incident involving Louise B. and her friend, who were allegedly sexually assaulted by McCoy. But the details of that incident came from the transcript of the 1991 sentencing hearing, which McCoy himself submitted into evidence as Exhibit Z.[5] The court also referenced McCoy's lack of candor regarding the details of the predicate offense. But the details of Lisa H.'s 1990 rape were properly admitted through the police reports and/or the preliminary hearing transcript under section 6600 (a)(3). (See *Sanchez*, *supra*, 63 Cal.4th at p. 686, second italics added ["What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, *unless they are independently proven by competent evidence or are covered by a hearsay exception*"].)

In short, assuming for the sake of argument case-specific hearsay evidence was admitted through expert testimony in violation of *Sanchez*, we presume the trial court

---

[5] The prosecution attempted to subpoena Louise B. as a witness, but the court declared her to be unavailable. Therefore, her testimony was also properly admitted as former testimony. (See Evid. Code, § 1291.) McCoy's statements to 15-year-old Kristina P. about having sexual thoughts about her (when he gave her the knife) were also properly admitted because they were included within the police reports of the predicate offense under section 6600 (a)(3), or as statement of a party opponent (McCoy admitted to Dr. Longwell that he had made the statement to Kristina). (See Evid. Code, § 1220.)

excluded from its consideration any such evidence, and McCoy has not overcome that presumption. (See Evid. Code, § 664.)

McCoy also contends the trial court violated *Sanchez* by improperly *excluding* some of the expert witness testimony: "Throughout this trial, appellant sought to present testimony about general background information from expert witnesses. The trial court and the district attorney correctly identified this testimony as hearsay, but failed to recognize that this was admissible hearsay under *Sanchez*."

Once again, McCoy has largely failed to specifically identify in the record where he raised this same ground in the trial court. (See *People v. Kennedy*, *supra*, 36 Cal.4th at p. 612 ["When an objection is made to proposed evidence, the specific ground of the objection must be stated. The appellate court's review of the trial court's admission of evidence is then limited to the stated ground for the objection"].)

In any event, even if we were to find error, we would not find the error to be arguably prejudicial. (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836.) McCoy asked several expert witnesses about the behavior of other Coalinga patients. McCoy's questions were generally met with a hearsay objection, and the court usually sustained the objection. The excluded testimony was presumably offered to show that McCoy is a good and compliant patient at Coalinga as compared to other patients. However, there is undisputed evidence in the record McCoy was a model patient, and the trial court specifically took this positive evidence into consideration when making its ruling.

In sum, we find the trial court did not abuse its discretion by either admitting or excluding any expert witness testimony based on *Sanchez*.

### 3. Alleged Erroneous Admission of PPG Test Results

McCoy contends the trial court erroneously allowed the prosecution to introduce evidence of his PPG tests conducted at Coalinga without foundation in violation of *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*). We disagree.

The *Kelly* rule concerns the admissibility of evidence based on a new scientific method, which requires a showing the method is generally accepted in the relevant scientific community.[6] (*People v. Shirley* (1982) 31 Cal.3d 18, 34.) The *Kelly* rule applies only to expert testimony "based, in whole or part, on a technique, process, or theory which is *new* to science and, even more so, the law." (*People v. Stoll* (1989) 49 Cal.3d 1136, 1156.) The *Kelly* rule applies only if "the unproven technique or procedure appears in both name and description to provide some definitive truth which the expert need only accurately recognize and relay to the jury. The most obvious examples are machines or procedures which analyze physical data." (*Ibid.*)

A PPG "test consists of a device that fits over the man's penis' and 'measures any changes in the blood flow to the penis, or erection' while the man views pictures of, and listens to audio tapes describing, sexual activity with adults and children." (*People v. Stoll*, *supra*, 49 Cal.3d at pp. 1159-1160, fn. 21.) Generally, PPG test results have not been found to be sufficiently reliable to be admissible in California courts. (See, e.g., *People v. John W.* (1986) 185 Cal.App.3d 801, 803-804, disagreed with on another rule of law as stated in *Stoll*, at p. 1159-1160, fn. 21.)

However, the fact that PPG testing has been found inadmissible for evidentiary purposes does not mean the test is unreliable for other purposes, such as sex offender treatment. (See *Doe ex rel. Rudy-Glanzer v. Glanzer* (9th Cir. 2000) 232 F.3d 1258, 1266 [acknowledging courts have accepted the use of PPG "in the treatment and monitoring of sex offenders" but the test lacks sufficient indicia of reliability for admissibility as evidence at trial]; *United States v. Powers* (4th Cir. 1995) 59 F.3d 1460,

---

[6] "Formerly known as the *Kelly-Frye* rule, based on the rulings of . . . *Kelly* [, *supra*,] 17 Cal.3d 24 . . . and *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, the rule is now the *Kelly* rule in California after changes to the Federal Rules of Evidence that superseded *Frye*." (*People v. Nieves* (2021) 11 Cal.5th 404, 442, fn. 8.)

1471 & fn. 13 [noting, in context of finding PPG too unreliable for admissibility, other decisions have found PPG valid for use in treatment and monitoring of sex offenders].)

McCoy has forfeited this contention on appeal because he did not raise the same objection about the *Kelly* rule at any point during the hearing as to the PPG tests. (See *People v. Em* (2009) 171 Cal.App.4th 964, 971, fn. 5.) Anticipating this, McCoy alternatively argues he received ineffective assistance of counsel (IAC).

A criminal defendant has a constitutional right to effective assistance of counsel. (U.S. Const., 6th Amend.; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685.) To establish IAC, a defendant must show: 1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) this resulted in prejudice. (*Id.* at pp. 687-688, 691-692.) There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id.* at pp. 689-690.) "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter.'" (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

If the record does not explain why counsel acted, or failed to act, in the manner challenged, a reviewing court must reject an IAC claim on appeal, unless counsel was asked for an explanation and did not provide an explanation, or unless there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [IAC claims usually involve matters outside of the record and "are often more appropriately litigated in a habeas corpus proceeding"].)

During McCoy's section 6608 hearing, the prosecution asked several witnesses about McCoy's PPG test results. McCoy's counsel objected on various grounds (e.g., hearsay), but not on the grounds being raised on appeal (violation of the

27

*Kelly* rule). The record does not reveal why counsel did not object on these grounds; therefore, we reject McCoy's alternative IAC claim on direct appeal.[7]

In sum, McCoy forfeited his objection to the PPG test results based on the *Kelly* rule and we do not find his alternative IAC claim to be cognizable on direct appeal.

### 4. Alleged Erroneous Admission of Polygraph Results

McCoy contends: "The trial court erroneously admitted evidence of the results of polygraphs examinations in violation of its own ruling and the law." (Capitalization and boldfacing omitted.) We disagree.

"Notwithstanding any other provision of law, *the results* of a polygraph examination, *the opinion* of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence in any *criminal proceeding* . . . unless all parties stipulate to the admission of such results." (Evid. Code, § 351.1, italics added; *People v. Miller* (1989) 208 Cal.App.3d 1311, 1314-1315 [although polygraph tests have generally been deemed unreliable for evidentiary purposes, this does not preclude their use as a valuable investigative tool].)

A hearing to consider an SVP defendant's petition for conditional release is not a criminal proceeding, it is a special proceeding of a civil nature. (See *People v. Sword* (1994) 29 Cal.App.4th 614, 635-636.) Therefore, Evidence Code section 351.1 does not bar the admission of polygraph results or the opinions of a polygraph examiner (also known as a polygrapher) in a section 6608 hearing for conditional release. (See *People v. Fields* (2009) 175 Cal.App.4th 1001, 1016-1017.)

---

[7] We suspect trial counsel's failure to object based on the *Kelly* rule was a strategic decision because counsel, in fact, called as a witness the technician who performed the PPG tests. The PPG technician testified McCoy showed no significant arousal to any stimuli during his last test, and counsel argued the point in her closing argument.

"Under the *Kelly/Frye* (or simply "*Kelly*") inquiry applicable in California courts, 'when faced with a novel method of [scientific] proof, [we] have required a preliminary showing of general acceptance of the new technique in the relevant scientific community' before the scientific evidence may be admitted at trial." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 831.) In civil cases, or cases that are civil in nature, a party seeking the admission of polygraph evidence must show it is generally accepted as reliable in the scientific community during a pretrial *Kelly* hearing. (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 132-133.)

Here, prior to the section 6600 hearing, McCoy filed a motion in limine seeking to exclude the results of his polygraph tests unless the prosecution met the standards for admissibility under the *Kelly* rule. After hearing argument and reviewing relevant case law, the trial court ruled the polygrapher's opinions would be excluded, but the "underlying information, such as the defendant's statements provided to the polygrapher . . . , would be admissible . . . as . . . statements against the party [opponent]." The prosecutor asked if the People called the polygrapher as a witness would the polygraph results be admissible, and the court responded: "Yes."

The following day, the prosecutor said, "In the event that we are not able to contact [the polygrapher], the People are seeking to introduce the polygraphs with the redactions." There was then a lengthy discussion regarding proposed redactions to the polygraph reports; the court ruled on each proposal, generally remaining consistent with its earlier ruling to exclude the polygrapher's opinions, while leaving in McCoy's statements. During the section 6608 hearing itself, the prosecutor then used the redacted polygraph reports, either during the direct examination of its own witnesses, or during the cross-examination of McCoy's witnesses.

On appeal, McCoy argues the trial court erred by ruling that the results of the polygraph examination would be admissible if the polygrapher testified (without qualifying that there needed to first be a *Kelly* hearing). However, the prosecution never

called the polygrapher as a witness, so there was never a need for a *Kelly* hearing because only the redacted versions of the polygraph examinations (McCoy's statements) were admitted into evidence. Therefore, we find no evidentiary error.

McCoy also argues the trial court violated its own pretrial ruling by allowing the results of the polygraph tests (the polygrapher's opinions) to be admitted during the hearing through the testimony of various witnesses. We disagree.

On this point, McCoy's citations to the RT are largely inaccurate. For instance, McCoy asserts in his AOB, citing pages 1132 through 1135 of the RT: "Groman testified over objection that appellant had failed a polygraph." In these pages Dr. Groman is not being asked about polygraph tests, she is being asked about PPG tests. McCoy also asserts, citing pages 2404 through 2413 of the RT, that "Phenix testified that the polygrapher though appellant was lying." In these pages, Dr. Phenix did not testify that the polygrapher thought McCoy was lying. Indeed, the prosecutor asked Phenix whether she thought McCoy was being truthful, and the court specifically admonished the witness: "You can state what your opinion is, not what the polygrapher's conclusion was."

In any event, because this was a court hearing and not a jury trial, we presume the trial court was able to disregard any inadmissible evidence concerning the polygraph tests (assuming any such evidence was revealed). (See *Presley*, *supra*, 65 Cal.App.5th at pp. 1142-1143.) Moreover, when the court announced its ruling and stated its analysis, the court did not mention the polygraph results.

In sum, we do not find the trial court abused its discretion regarding the challenged polygraph examinations.


5. *Leading Questions of Expert Witnesses*

McCoy contends: "On numerous occasions, the trial court inexplicably refused to allow appellant's trial counsel to ask leading questions of expert witnesses as

30

clearly permitted under California law." (Capitalization and boldfacing omitted.) But McCoy also concedes his counsel "could always re-ask questions in a non-leading fashion" and therefore the court's evidentiary rulings were not "highly prejudicial."

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court . . . ." (Evid. Code, § 354.)

Here, McCoy has not identified any proffered evidence that was excluded, nor has he argued reversible prejudice (a miscarriage of justice). Thus, we find no abuse of the trial court's discretion.

## C. Cumulative Prejudice

Finally, McCoy contends the cumulative prejudicial effect of the court's alleged foregoing errors require reversal.

"In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself." (*In re Reno* (2012) 55 Cal.4th 428, 483.) However, the rejection of each of a defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate." (*Ibid.*)

In conclusion, we have found McCoy's various individual claims of error to be without merit; therefore, there is no prejudice to aggregate or analyze.

III

DISPOSITION

The trial court's order denying McCoy's section 6608 petition for conditional release is affirmed.


                                        MOORE, J.

WE CONCUR:


O'LEARY, P. J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.